## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jul 18 2018, 10:29 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

| ATTORNEY FOR APPELLANT | ATTORNEYS FOR APPELLEE |
|---|---|
| Kimberly A. Jackson | Curtis T. Hill, Jr. |
| Indianapolis, Indiana | Attorney General of Indiana |
| | Ellen H. Meilaender |
| | Supervising Deputy Attorney General |
| | Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Joshua Travis Hall, | July 18, 2018 |
| *Appellant-Defendant,* | Court of Appeals Case No. 18A-CR-54 |
| v. | Appeal from the Sullivan Superior Court |
| State of Indiana, | The Honorable Hugh R. Hunt, Judge |
| *Appellee-Plaintiff.* | Trial Court Cause No. 77D01-1608-F2-551 |

**Najam, Judge.**

# Statement of the Case

Joshua Travis Hall appeals his sentence for aggravated battery, as a Level 3 felony, and involuntary manslaughter, as a Level 5 felony, following a guilty plea. He raises two issues for our review, which we restate as follows:

1. Whether the trial court abused its discretion when it sentenced him.

2. Whether his sentence is inappropriate in light of the nature of the offenses and his character.

We affirm.

# Facts and Procedural History

In 2016, Hall and his girlfriend, Rustim Rehmel, resided together. On August 15, Hall and Rehmel were involved in a physical altercation outside of a bar.[1] During the fight, Hall punched and kicked Rehmel in her head and face. A bystander called 9-1-1, and Farmersburg Town Marshall George McAdams responded. Marshall McAdams interviewed Rehmel, who informed him that Hall had punched and kicked her in the head and face. Marshall McAdams observed some contusions on Rehmel. Rehmel declined medical treatment, and she returned to the bar. Following the altercation, Rehmel had several

---

[1] Hall has filed a motion to strike portions of the State's brief that rely on information contained in the Affidavit for Probable Cause. We have separately denied Hall's motion. But, in any event, our decision here does not rely on any of the facts that Hall disputes in his motion.

injuries, including "bleeding from a scalp wound." Ex. at 5.[2] Rehmel also "demonstrated symptoms of a concussion, with confusion, and had become incontinent of urine." *Id*.

[4] Sometime later, Rehmel was escorted home by another individual. Hall was waiting at the house when Rehmel arrived. Rehmel then went to sleep and was snoring. Approximately twenty minutes later, Hall noticed that Rehmel was not breathing, and he began to administer CPR. Hall then ran to a neighbor's house to call the paramedics. Sullivan County Sheriff Clark Cottom, who was already on his way to Rehmel's house in order to conduct a welfare check, arrived on the scene and observed Rehmel unresponsive on the living room floor. Rehmel had died from her injuries.

[5] A pathologist at the Terre Haute Regional Hospital conducted an autopsy on Rehmel. During the autopsy, the pathologist identified "several blunt force injuries" on Rehmel. Ex. at 6. Those injuries included swelling of the head and nose, contusions on her face, an abrasion on her scalp, a subdural hemorrhage, and contusions over both of her upper arms and her right hand. Based on those findings, the pathologist concluded that Rehmel's cause of death was blunt-force trauma to the head.

[6] The State charged Hall with voluntary manslaughter, as a Level 2 felony ("Count I"); battery resulting in serious bodily injury, as a Level 5 felony

---

[2] Our pagination of the Exhibits Volume refers to the .pdf pagination.

("Count II"); involuntary manslaughter, as a Level 5 felony ("Count III"); reckless homicide, as a Level 5 felony ("Count IV"); and criminal confinement, as a Level 6 felony ("Count V"). The State later added one count of aggravated battery, as a Level 3 felony ("Count VI"). On September 14, 2017, the State and Hall entered into a plea agreement. Hall agreed to plead guilty to Counts III and VI and, in exchange, the State agreed to dismiss the remaining counts. The plea agreement also left sentencing to the discretion of the trial court except that any sentence imposed on the two counts would run concurrently.

[7]     The trial court held a hearing on Hall's guilty plea on December 8, 2017. Hall admitted that he had intentionally punched or kicked Rehmel in the head or face area and that, as a result, Rehmel sustained serious bodily injury, including a contusion to her face and bleeding from her head. He also admitted that he caused a substantial risk of death when he punched or kicked Rehmel in the head or face and that Rehmel died as a result of his actions. During the hearing, Hall moved to admit as evidence the pathologist's autopsy report, which the trial court admitted. The trial court also admitted as evidence a statement by the pathologist that "it was possible, not likely or certain, but a slight possibility existed" that Rehmel might not have died had she received appropriate medical attention after the altercation. Appellant's App. Vol. II at 120.

[8]     The trial court accepted Hall's guilty plea and held a sentencing hearing. During the sentencing hearing, Hall proffered several mitigating circumstances. At the conclusion of the hearing, the trial court found as an aggravating

circumstance in regard to the offense of aggravated battery that the "ultimate" harm suffered was greater than the elements necessary to prove the commission of the crime. Tr. Vol. II at 72. The trial court also found as aggravating circumstances for both offenses the "brutality" of the crimes and that Hall has a criminal history, although the trial court did not give his criminal history "considerable weight" in light of the nature of his prior offenses and "the passage of time." *Id*. at 73. And the trial court identified Hall's guilty plea and willingness to pay restitution as mitigating circumstances. The trial court found that the mitigators did not "even come close to outweighing or equaling the aggravators" and sentenced Hall to sixteen years for Count VI and five years for Count III. *Id*. The trial court ordered those sentences to run concurrently in accordance with the plea agreement for an aggregate term of sixteen years in the Department of Correction. This appeal ensued.

# Discussion and Decision

## *Issue One: Abuse of Discretion*

[9]     Hall first contends that the trial court abused its discretion "by sentencing Hall based on improper factors." Appellant's Br. at 13. Sentencing decisions lie within the sound discretion of the trial court. *Cardwell v. State*, 895 N.E.2d 1219, 1222 (Ind. 2008). An abuse of discretion occurs if the decision is "clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom." *Gross v. State*, 22 N.E.3d 863, 869 (Ind. Ct. App. 2014) (citation omitted), *trans. denied*.

A trial court abuses its discretion in sentencing if it does any of the following:

> (1) fails "to enter a sentencing statement at all;" (2) enters "a sentencing statement that explains reasons for imposing a sentence—including a finding of aggravating and mitigating factors if any—but the record does not support the reasons;" (3) enters a sentencing statement that "omits reasons that are clearly supported by the record and advanced for consideration;" or (4) considers reasons that "are improper as a matter of law."

*Id.* (quoting *Anglemyer v. State*, 868 N.E.2d 482, 490-491, *clarified on other grounds reh'g*, 875 N.E.2d 218 (Ind. 2007)). However, the relative weight or value assignable to reasons properly found, or those that should have been found, is not subject to review for abuse of discretion. *Id.* And a trial court is under no obligation to explain why a proposed mitigator does not exist or why the court gave it insignificant weight. *Sandleben v. State*, 22 N.E.3d 782, 796 (Ind. Ct. App. 2014), *trans. denied*. Here, Hall contends that the trial court abused its discretion when it found certain aggravating factors and when it failed to find certain mitigating circumstances.

*Aggravators*

Brutality of the Offense

Hall first contends that the trial court abused its discretion when it found as an aggravating factor the brutality of the offenses because, he contends, while the crimes were "admittedly violent," they were not brutal. Appellant's Br. at 14. Hall specifically asserts that the crimes were not brutal because "[h]e made no admission that he hit or kicked [Rehmel] when she was on the ground."

Appellant's App. at 14. He also asserts that the crimes were not brutal when compared with other aggravated battery cases.

[12] However, we must disagree. Whether Rehmel was or was not on the ground when Hall hit and kicked her is irrelevant. And whether there are cases that exist in which the crime was worse than Hall's offenses does not detract from the brutality of his actions. The undisputed facts demonstrate that Hall hit and kicked Rehmel in the head and face to the point that she suffered a concussion, urinated on herself, and ultimately died from the blunt-force injuries he had inflicted on her. We agree with the trial court that the crimes were "brutal" in nature. Appellant's App. Vol. II at 6.

[13] Hall also asserts that the trial court abused its discretion when it identified the brutality of the offenses as an aggravator because it "found an element of the offense to be an aggravating circumstance." *Id*. at 15. "[A] material element of a crime may not be used as an aggravating factor to support an enhanced sentence." *McElroy v. State*, 865 N.E.2d 584, 589 (Ind. 2007). But "when evaluating the nature of the offense, 'the trial court may properly consider the particularized circumstances of the factual elements as aggravating factors.'" *Id*. (quoting *McCarthy v. State*, 749 N.E.2d 528, 539 (Ind. 2001)).

[14] Here, Hall, while intoxicated, hit and kicked his girlfriend enough times to leave several injuries on her head and face, which caused her to exhibit symptoms of a concussion, to urinate on herself, and, ultimately, caused her death. Those particular factual elements clearly go beyond the material

elements needed to establish that Hall committed aggravated battery and involuntary manslaughter. Put another way, Hall's conduct could have satisfied the statutory elements of the crimes without the offenses having been as brutal as they were. As such, we agree with the State that the trial court did not rely on the elements of the offenses but, rather, on the particularized facts of the crimes when it found that the crimes were brutal. The trial court did not abuse its discretion when it identified the brutality of the offenses as an aggravating circumstance.

## Criminal History

[15] Hall also maintains that the trial court abused its discretion when it found his criminal history—which consists of one conviction for illegal consumption of an alcoholic beverage, as a Class C misdemeanor, from 2003 and one conviction for operating a vehicle while intoxicated, as a Class A misdemeanor, from 2009—as an aggravating factor. Hall specifically asserts that his record is relatively minor and remote in time and, therefore, not worthy of being considered as an aggravating factor. But it is well settled that "[a] person's criminal history is a valid aggravating circumstance[.]" *Newsome v. State*, 797 N.E.2d 293, 300 (Ind. Ct. App. 2003). And "'we will not say that remoteness in time, to whatever degree, renders a prior conviction irrelevant.'" *Buchanan v. State*, 767 N.E.2d 967, 972 (Ind. 2002) (quoting *Harris v. State*, 275 Ind. 210, 396 N.E.2d 674, 677 (1979)). "The remoteness of prior criminal history does not preclude the trial court from considering it as an aggravating circumstance." *Id*.

Thus, the trial court properly considered Hall's criminal history as an aggravating factor. *See id*.

[16] Still, Hall asserts that "the gravity, timing, and nature of Hall's prior offenses left them insignificant in the context of this prosecution." Appellant's Br. at 17. "The significance of a defendant's criminal history varies based on the gravity, nature, and number of prior offenses as they relate to the current offense." *Field v. State*, 843 N.E.2d 1008, 1011 (Ind. Ct. App. 2006). However, the relative weight that the trial court assigned to Hall's criminal history is not subject to review for abuse of discretion. *Gross*, 22 N.E.3d at 869. In any event, the trial court gave Hall's criminal history less weight than it gave the other aggravating factors based on the nature of the crimes and the remoteness in time of their commission. The trial court did not abuse its discretion when it identified Hall's criminal history as an aggravating circumstance.

*Mitigators*

[17] Hall also contends that the trial court abused its discretion when it failed to find several mitigating circumstances.

> [A] finding of mitigating circumstances also lies within the trial court's discretion. The court need not state in the record those mitigating circumstances that it considers insignificant. And the trial court is not obligated to explain why it did not find a factor to be significantly mitigating. Nor is the sentencing court required to place the same value on a mitigating circumstance as does the defendant.

*Sandleben*, 22 N.E.3d at 796-97 (internal citations omitted).  Further, "'[i]f the trial court does not find the existence of a mitigating factor after it has been argued by counsel, the trial court is not obligated to explain why it has found that the factor does not exist.'"  *Anglemeyer*, 868 N.E.2d at 493 (quoting *Fugate v. State*, 608 N.E.2d 1370, 1374 (Ind. 1993)).

[18]  Hall asserts that the trial court failed to consider five of his proffered mitigating circumstances:  (1) that the crime is unlikely to recur; (2) that Hall is unlikely to commit another crime; (3) that Hall would respond affirmatively to probation or short-term imprisonment; (4) that his incarceration would place an undue hardship on his children; and (5) that Hall has expressed remorse for his offenses.  However, the record reflects that the trial court considered those mitigators but wholly rejected them.  The court stated in its judgment of conviction and sentencing order that Hall "proffers several mitigating factors, but the only ones that the Court finds to have any merit are that [Hall] saved the family and the taxpayers the grief and expense of a trial and that he desires to pay for the victim's funeral expenses."  Appellant's App. Vol. II at 7.

[19]  That was not an abuse of discretion.  The trial court considered Hall's proffered mitigators but found them to be of insignificant weight.  The court was not required to explain why it did not find those factors to be significantly mitigating, nor was the trial court required to place the same weight on the mitigating circumstances that Hall assigns to them.  *Sandleben*, 22 N.E.3d at 796-97.  The trial court did not abuse its discretion when it declined to find Hall's proffered mitigating circumstances to be significant.

### Issue Two: Inappropriateness of Sentence

[20] Hall next contends that his sentence for aggravated battery, as a Level 3 felony, and involuntary manslaughter, as a Level 5 felony, is inappropriate in light of the nature of the offenses and his character. Indiana Appellate Rule 7(B) provides that "[t]he Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." This court has recently held that "[t]he advisory sentence is the starting point the legislature has selected as an appropriate sentence for the crime committed." *Sanders v. State*, 71 N.E.3d 839, 844 (Ind. Ct. App. 2017). And the Indiana Supreme Court has recently explained that:

> The principal role of appellate review should be to attempt to leaven the outliers . . . but not achieve a perceived "correct" result in each case. *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). Defendant has the burden to persuade us that the sentence imposed by the trial court is inappropriate. *Anglemyer v. State*, 868 N.E.2d 482, 494 (Ind.), as amended (July 10, 2007), *decision clarified on reh'g*, 875 N.E.2d 218 (Ind. 2007).

*Shoun v. State*, 67 N.E.3d 635, 642 (Ind. 2017) (omission in original).

[21] Indiana's flexible sentencing scheme allows trial courts to tailor an appropriate sentence to the circumstances presented, and the trial court's judgment "should receive considerable deference." *Cardwell*, 895 N.E.2d at 1222. Whether we regard a sentence as inappropriate at the end of the day turns on "our sense of the culpability of the defendant, the severity of the crime, the damage done to

others, and myriad other facts that come to light in a given case." *Id*. at 1224. The question is not whether another sentence is more appropriate, but rather whether the sentence imposed is inappropriate. *King v. State*, 894 N.E.2d 265, 268 (Ind. Ct. App. 2008). Deference to the trial court "prevail[s] unless overcome by compelling evidence portraying in a positive light the nature of the offense (such as accompanied by restraint, regard, and lack of brutality) and the defendant's character (such as substantial virtuous traits or persistent examples of good character)." *Stephenson v. State*, 29 N.E.3d 111, 122 (Ind. 2015).

[22] Here, Hall pleaded guilty to one count of aggravated battery, as a Level 3 felony, and one count of involuntary manslaughter, as a Level 5 felony. The sentencing range for a Level 3 felony is three years to sixteen years, with an advisory sentence of nine years. Ind. Code § 35-50-2-5(b) (2018). And the sentencing range for a Level 5 felony is one year to six years, with an advisory sentence of three years. I.C. § 35-50-2-6(b). The trial court sentenced Hall to an aggregate term of sixteen years in the Department of Correction.

[23] Hall contends that his sentence in inappropriate in light of the nature of the offenses because, "while the altercation was entirely unjustified, no one, including Rehmel, apparently believed she was injured enough to require earlier medical intervention." Appellant's Br. at 24. But, here, the undisputed facts demonstrate that Hall punched or kicked Rehmel multiple times in her face and head such that she died from her injuries. The autopsy report showed that Rehmel had "several blunt force injuries" to her body. Ex. at 6. The autopsy report further indicated that, "following the initial altercation at the tavern,

[Rehmel] had demonstrated symptoms of a concussion, with confusion, and had become incontinent of urine." *Id.* We agree with the trial court that these were especially "brutal" crimes. Hall has not met his burden on appeal to demonstrate that his sentence in inappropriate in light of the nature of the offenses.

Hall also asserts that his sentence is inappropriate in light of his character because his criminal history is minor and remote in time, he voluntarily cooperated with police, and he accepted responsibility when he pleaded guilty. He further contends that he was "an active, loving, hands-on, and supportive parent to his two young children" and that his incarceration "will limit, if not prevent, his financial support of them." Appellant's Br. at 26. But Hall has not provided compelling evidence portraying his character in a positive light. While Hall's criminal history is relatively minor and remote in time, both of his prior convictions involved the use of alcohol. And Hall was intoxicated during the instant offenses. Further, the fact that he punched and kicked his girlfriend to the point that she suffered a concussion and ultimately died reflects poorly on his character. As such, we cannot say that Hall's sixteen-year sentence for aggravated battery and involuntary manslaughter is inappropriate in light of his character. We affirm Hall's sentence.

Affirmed.

Robb, J., and Altice, J., concur.